IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| VIRGINIA BUCKLAND, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C.A. No. 4:15-cv-400-O |
| | § | |
| OHIO NATIONAL LIFE | § | |
| ASSURANCE CORPORATION, | § | |
| | § | |
| Defendant, | § | |
| | § | |
| v. | § | |
| | § | |
| MARK BUCKLAND, | § | |
| | § | |
| Third-Party Defendant. | § | |

**DEFENDANT'S FIRST AMENDED ANSWER, COUNTERCLAIM,
AND THIRD-PARTY COMPLAINT**

Defendant Ohio National Life Assurance Corporation ("Ohio National") files its

First Amended Answer[1] to the Complaint of Plaintiff Virginia Buckland ("Buckland")

and further files its Counterclaim and Third-Party Complaint against Mark Buckland

("Mark") as follows:

**ANSWER**

1.      With respect to the allegations in paragraph no. 1, admits that Ohio

National is an Ohio insurance corporation with its principal office and place of business

in Cincinnati, Ohio; admits that Ohio National does business in the state of Texas; admits

---

[1] Pursuant to Fed. R. Civ. P. 15(a), Ohio National may amend its answer without leave of Court within 20 days after
the original answer was served, which was May 15, 2015.

that Ohio National has been served with process and has made an appearance in this action for all purposes; and denies the remaining allegations.

2.      With respect to the allegations in paragraph no. 2, admits that the Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Buckland and Ohio National and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs; and denies the remaining allegations.

3.      With respect to the allegations in paragraph no. 3, admits that venue is proper in this district and division; and denies the remaining allegations.

4.      With respect to the allegations in paragraph no. 4, states the allegations do not require a response.

5.      Denies the allegations in paragraph no. 5A.

6.      With respect to the allegations in paragraph no. 5B, admits that Buckland, through her attorney, sent a demand letter to Ohio National dated February 9, 2015; states that the above-referenced lawsuit was filed on April 14, 2015; and denies the remaining allegations.

7.      With respect to the allegations in paragraph no. 6A, admits that Ohio National issued term life insurance policy no. 6847485 insuring the life of Anita Dyson Fox ("Fox") effective February 27, 2008 (the "Policy"); admits that premiums had been paid and the Policy had not lapsed for nonpayment of premium as of September 23, 2014.

8.      With respect to the allegations in paragraph no. 6B, admits that Fox was murdered on September 23, 2014; and denies the remaining allegations.

9.      With respect to the allegations in paragraph no. 6C, admits that the primary beneficiary of the Policy is Buckland; admits that Buckland contends that she is the daughter of Fox; and denies the remaining allegations.

10.     With respect to the allegations in paragraph no. 6D, admits that the face amount of coverage under the Policy is $1,000,000; and denies the remaining allegations.

11.     With respect to the allegations in paragraph no. 6E, admits that the application for the Policy was signed and dated on November 22, 2007; and denies the remaining allegations.

12.     With respect to the allegations in paragraph no. 6F, admits that premiums were paid for the Policy and it did not lapse between February 27, 2008 and September 23, 2014; and denies the remaining allegations.

13.     With respect to the allegations in paragraph no. 6G, states that Buckland's husband, Mark, called Ohio National on October 10, 2014 reporting Fox's death and representing that he was the beneficiary of the Policy; states that Buckland submitted a claim form on October 24, 2014; and denies the remaining allegations.

14.     With respect to the allegations in paragraph no. 6H, admits that Ohio National acknowledged the notification of death and provided claim forms to Buckland by letter dated October 14, 2004; and denies the remaining allegations.

15.     With respect to the allegations in paragraph no. 6I, admits that Ohio National received completed claim forms and a death certificate on October 24, 2014; and denies the remaining allegations.

16.     With respect to the allegations in paragraph no. 6J, states that Ohio

National has been unable to pay the claim under the Policy because it has not received all items, statements, and forms reasonably required to ascertain if the Policy is enforceable and to whom benefits are payable; states that Ohio National has kept Buckland advised that the investigation is ongoing; and denies the remaining allegations.

17.     Denies the allegations in paragraph no. 7.

18.     Denies the allegations in paragraph no. 8.

19.     Denies the allegations in paragraph no. 9.

20.     Denies the allegations in paragraph no. 10.

21.     Denies that Buckland is entitled to the relief requested in paragraph no. 11.

22.     States the allegations in paragraph no. 12 do not require a response.

23.     States the allegations in paragraph no. 13 do not require a response.

24.     States that Buckland is not entitled to the relief requested in paragraph no. 14.

25.     States that Buckland is not entitled to the relief requested in paragraph no. 15.

26.     States that Buckland is not entitled to the relief requested in paragraph no. 16.

27.     States that Buckland is not entitled to the relief requested in paragraph no. 17.

28.     States the allegations in paragraph no. 18 do not require a response.

29.     States that Buckland is not entitled to the relief requested in her Prayer.

30.     Denies all allegations not specifically admitted.

## AFFIRMATIVE DEFENSES

31.     Buckland's claims are barred, in whole or in part, by the proportionate responsibility of Buckland or other responsible third parties pursuant to Tex. Civ. Prac. & Rem. Code § 33.001, *et seq*.

32.     Buckland's claims are barred, in whole or in part, by unclean hands, comparative bad faith or *in pari delicto* because, on information and belief, the Policy was part of an insurance fraud scheme and was issued based on false information on the Application and with intent to unlawfully profit from Fox's death.

33.     Subject to Ohio National's counterclaim for declaratory judgment, Buckland's claim for benefits under the Policy is barred if it is adjudicated that the Policy was void *ab initio* or otherwise failed to take effect due to the absence of the meeting of the minds between Ohio National and Fox and/or material and fraudulent misrepresentations on the Application for the Policy.

34.      Subject to Ohio National's counterclaim for declaratory judgment, Buckland's claim for benefits under the Policy is barred by Tex. Ins. Code § 1103.151 in the event it is adjudicated that Buckland was a principal or an accomplice in willfully bringing out the death of Fox.

35.     Buckland's claims under the Texas Insurance Code are barred, in whole or in part, because they are groundless in fact and/or law and are brought in bad faith or for the purposes of harassment and, as such, Ohio National is entitled to recover its reasonable and necessary attorneys' fees and costs pursuant to Tex. Ins. Code § 541.153.

36.     Subject to Ohio National's counterclaim for declaratory judgment,

Buckland's claims are barred by failure of conditions precedent to the effectiveness of the Policy if it is adjudicated that Fox failed to consent to the Policy or otherwise have a meeting of the minds with Ohio National to issue the Policy.

## COUNTERCLAIM AND THIRD_PARTY COMPLAINT

### FACTUAL BACKGROUND

37.    **The Application**.  By Application dated November 22, 2007, Fox, or someone purporting to be Fox, applied for a $1,000,000 20-year term life insurance policy.  The applicant represented, among other things, that she was 63 years old, her occupation was an "owner and operator" of "mobile home parks," her income was $300,000, and she had two well-controlled and minor medical conditions.  Further, the applicant certified that she did not have and was not applying for other life insurance policies except to make a premium comparison to accept the best offer.  Fox, or someone purporting to be Fox, signed the Application in Burleson, Texas certifying that "the statements and answers on this application are true and complete to the best of my knowledge and belief.  A copy of this application will be the basis of any policy issued."

38.    **Inspection Report**. On December 5, 2007, a telephonic Amplified Life Inspection Report was completed by Lab One.  Fox, or someone purporting to be Fox, represented to Ohio National, among other things, that she was the owner and operator of a mobile home park which shared the home address she provided on the Application, she had accurately represented her medical conditions in the Application, she quit smoking and was a nontobacco user, her income was $168,000 per year, she had never had insurance refused, rated, or cancelled, and she had not applied for and had no other

insurance.

39.     **The Paramedical Examination**.   On January 31, 2008, Fox, or someone purporting to be Fox, appeared for a physical examination in Joshua, Texas at the residence address stated on the Application.   The applicant again provided the same medical history and represented to the paramedical examiner that she had never previously been examined for an insurance policy.

40.     **The Policy**.   In reliance on the representations on the Application, the Inspection Report, the Paramedical Examination, and an Amendment to the Policy, Ohio National issued the Policy effective February 27, 2008.

41.     **The Beneficiary**.   The beneficiary of the Policy was Buckland who was described as Fox's daughter, and the contingent beneficiary was Rockie Buckland, also known as Mark Buckland, described as Fox's son-in-law.   Fox paid no premiums for the Policy.   Rather, the Bucklands paid the initial and all subsequent premiums for the Policy from their joint bank account.

42.     **Request for More Coverage**.   On or about March 21, 2008, Buckland faxed an application for a face amount increase to raise the coverage on Fox by another $1,000,000.   Ohio National declined the request to increase the amount of coverage.

43.     **The Murder Plot**.   Fox was stabbed to death on September 23, 2014 in Colleyville, Texas at a home where she was working as a housekeeper.   The media reported Fox was a victim of a high profile murder plot, apparently motivated by life insurance benefits.   According to news reports, Fox and her family had ties to the English and/or Irish Travellers, which have been described in the media as a "gypsy" group

which is "a secretive and nomadic ethnic group whose numbers often garner their wealth by doing dubious repair work and executing scams – and by taking out exorbitant life insurance policies on one another."

44.     **The Arrests**.   The news reports indicate that two members of the Irish Travellers group, Gerard and Bernard Gorman, also known as "Big Joe" and "Little Joe," were arrested for Fox's murder.   The Gormans are allegedly from Houston.   On information and belief, the Bucklands sold one of the life insurance policies insuring Fox in the face amount of $1 million to four members of the extended Gorman family and changed the designated beneficiary to one of the Gorman brothers living out of state. News reports indicate that Fox's family members tipped the police to the Gormans' involvement in the murder.   Big Joe was arrested, released on bond, and recently died in a Houston hotel room.   Little Joe, who is allegedly the "get away" driver, was arrested in Florida and has been released on bond and is awaiting trial.

45.     **Insurance Fraud**.   On information and belief, the Policy is part of a larger insurance fraud investigation.   Lawsuits and media reports have revealed that, contrary to the representations in Ohio National's Application, Fox was covered by multiple and large life insurance policies issued by multiple companies.   On information and belief, Fox had approximately $5 million dollars of coverage benefitting the Bucklands and the Gormans in the event of Fox's death.   Simultaneous with Buckland filing this lawsuit, her husband Mark sued Athene Life Insurance Company, formerly known as Aviva Life Insurance Company, to recover benefits under a $500,000 life insurance policy issued to Fox in November 2007, prior to the Policy.   The petition in Mark's lawsuit against

Athene Life alleges that the policy was but one of multiple policies issued to Fox at that time. Mark has also sued John Hancock Life Insurance Company seeking $2 million in life insurance benefits.

46. **Consent to the Policy**. On information and belief, Fox may have been unaware of one or more of the life insurance policies in force.

47. **The Misrepresentations**. Based on the foregoing, Fox or someone purporting to be Fox intentionally misrepresented and concealed from Ohio National other life insurance coverage that had been applied for or was in force prior to February 27, 2008 with the intent and purpose of fraudulently inducing Ohio National to issue the Policy. These misrepresentations were material to the risk and relied upon by Ohio National in issuing the Policy. Had Ohio National known of the application for and/or issuance of the other coverage, it would not have issued the Policy to Fox. Ohio National does not yet know if additional misrepresentations may have been made.

48. **The Ongoing Investigation**. A criminal investigation is ongoing regarding the life insurance policies issued to Fox and the circumstances of her death. Questions have been raised regarding whether Fox was aware of and consented to the issuance of the Policy and the other policies. According to news reports and public records, one of Fox's family members, believed to be Mark, initially lied to law enforcement officers and denied that Fox had any life insurance, but later admitted to the Colleyville Policy Department that he did have a policy on Fox and that it was a "monster." Given the pending and incomplete investigation, Ohio National cannot determine whether Fox was aware of and consented to the Policy and, if so, whether Buckland, Mark, or the "nearest

relative" of Fox is a principal or an accomplice in willfully bringing about her death thereby forfeiting any interest in the Policy under Tex. Ins. Code § 1103.151 and § 1103.152(c).

49.     **The Controversy**.  Because the criminal investigation is incomplete and the criminal proceedings remain pending, Ohio National does not have the information necessary to constitute final proof of loss to determine if the Policy took effect and, if so, to whom benefits are payable. To pressure Ohio National and the other insurance carriers to make payment. Buckland and Mark filed a series of lawsuits prematurely seeking to compel payment of life insurance benefits and alleging bad faith for delaying payment. Buckland asserts claims against Ohio National for breach of contract, statutory bad faith, and a statutory penalty under the prompt payment statute in the Texas Insurance Code. Ohio National, however, cannot make a claim decision until further facts are developed and the criminal proceedings have progressed or concluded.

## CAUSES OF ACTION

50.     **Declaratory Judgment**.  Ohio National states there is an actual, justiciable controversy between the parties and requests the Court adjudicate, pursuant to 28 U.S.C. § 2201, the following issues:

      a.      Whether the Policy is a valid and enforceable contract, including, but not limited to:

            (i) whether Fox was aware of and/or consented in writing to the Policy being taken out in her name and to the designation of Buckland as primary beneficiary and Mark as contingent beneficiary;

            (ii)  if Fox was aware of and consented to the Policy, whether

Fox intentionally made fraudulent and material misrepresentations in the Application with the intent to induce Ohio National to issue the Policy thereby allowing Ohio National to rescind and void the Policy pursuant to Tex. Ins. Code § 705.104.

b.      Alternatively, if the Policy is valid and enforceable, whether the primary, contingent, and default beneficiaries under the Policy had an insurable interest in Fox's life when the Policy was issued and when Fox died.

c.      Alternatively, if the Policy is valid and enforceable and the beneficiaries had an insurable interest, whether the primary and contingent beneficiaries have forfeited any interest in the Policy under Tex. Ins. Code § 1103.151.

d.      If the primary and contingent beneficiaries have forfeited all interest in the Policy under Tex. Ins. Code § 1103.151, whether there is any "nearest relative of the insured" who has not forfeited such right to benefits and is entitled to receive benefits under the Policy under Tex. Ins. Code § 1103.152 and, if not, who is entitled to the benefits.

e.      That Ohio National has not received all items, statements, and forms that Ohio National reasonably believes are required to secure final proof of loss and, as such, Ohio National has no liability under the Texas Insurance Code or otherwise for allegedly delaying or denying payment of the claim pending the adjudication of the issues above.

f.      The parties' respective rights and liabilities under the Policy.

51.      **Conditional Interpleader**.  In the event it is adjudicated that the Policy is in force and effect, Ohio National is a neutral stakeholder and is unable to pay benefits under the Policy to any person without incurring potential multiple liability.  Subject to its request for declaratory relief, Ohio National hereby conditionally tenders the benefits under the Policy, plus applicable interest ("Interpled Funds"), and requests that, if and when the Court adjudicates the Policy is in force, the Court accept the Interpled Funds

into the registry of the Court, require all competing claimants and beneficiaries to interplead their claims to the Interpled Funds, and discharge Ohio National from all liability to all claimants and beneficiaries with respect to benefits under the Policy.

52.     **Attorneys' Fees**.   In the event the benefits under the Policy must be interpled and deposited, Ohio National seeks to recover its reasonable and necessary attorneys' fees and costs incurred in this action from the Interpled Funds. Ohio National also seeks to recover its attorneys' fees and costs under Tex. Ins. Code § 541.153 and/or Tex. Bus. & Com. Code § 17.50(c).

## RELIEF REQUESTED

53.     **Prayer**.   Ohio National respectfully requests the following relief:

a.      That Plaintiff take nothing by reason of her claims asserted against Ohio National or asserted under the Policy;

b.      That Plaintiff and Third-Party Defendant be required to answer this counterclaim and third-party complaint in the time and manner prescribed by law;

c.      That Ohio National be allowed to conditionally tender the Interpled Funds and deposit the Interpled Funds into the Court's registry in the event it is adjudicated that the Policy is in force and effect pending the Court's adjudication of the appropriate recipient of the Interpled Funds;

d.      That Ohio National be discharged from this action with prejudice and be awarded its reasonable and necessary attorneys' fees and costs from the Interpled Funds and/or under Tex. Ins. Code § 541.153 and/or Tex. Bus. & Com. Code § 17.50(c); and

e.      That Ohio National have such other and further relief, both general and special, at law and in equity, to which it may show itself justly entitled

Respectfully submitted,

By:   s/ Jill B. Davenport
   Bill E. Davidoff
   State Bar No. 00790565
   bill.davidoff@figdav.com
   Jill B. Davenport
   State Bar No. 00783680
   jill.davenport@figdav.com

FIGARI + DAVENPORT, LLP
901 Main Street, Suite 3400
Dallas, Texas 75202
(214) 939-2000
(214) 939-2090 (fax)

ATTORNEYS FOR DEFENDANT
OHIO NATIONAL LIFE
ASSURANCE CORPORATION

## CERTIFICATE OF SERVICE

I certify that all attorneys deemed to accept service of the above-referenced document electronically will be notified via the Court's CM/ECF system and all others will be notified via certified mail, return receipt requested on this 4th day of June 2015.

s/ Jill B. Davenport
Jill B. Davenport